FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
Jul 24, 2018
SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

No. 2:17-CV-00143-SMJ

SEASIDE INLAND TRANSPORT, a California corporation,

        Plaintiff,

v.

COASTAL CARRIERS LLC, and JOHN DUNARD AND NICOLE DUNARD, husband and wife,

        Defendants.

COASTAL CARRIERS LLC,

        Third-Party Plaintiff,

v.

PAUL MASSINGILL, a Washington individual, and SERVICE DRIVEN TRANSPORT, INC., a Washington corporation,

        Third-Party Defendants.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Before the Court, without oral argument, is Coastal Carriers, LLC (Coastal) and John and Nicole Dunard's (collectively, "Defendants") Motion to Dismiss Second Amended Complaint Pursuant to FRCP 12(c), ECF No. 72. Defendants assert that the Second Amended Complaint should be dismissed for lack of subject matter jurisdiction, or, alternatively, that the tort claims should be dismissed under Federal Rule of Civil Procedure 12(c). Plaintiff Seaside Inland Transport (Seaside),

ORDER DENYING MOTION TO DISMISS **-** 1

opposes the motion. Having reviewed the pleadings and the file in this matter, the Court is fully informed and denies the motion.

## BACKGROUND

**A.      Facts as Alleged in the Complaint[1]**

Paul Massingill is the principal of Seaside, a corporation formed in California and doing business in Wenatchee, Washington. John and Nicole Dunard are the principals of Coastal, a Misssouri limited liability company based in Troy, Missouri. Coastal and Seaside were both involved in the freight brokerage industry. Freight brokers assist shippers in locating carriers qualified to haul certain goods. Freight brokers make a profit by moving the freight for less than the customer is willing to pay to ship the freight. The difference creates a profit retained by the freight broker.

In 2003, Massingill and Coastal entered into an agency agreement, under which Massingill would broker freight for Coastal in exchange for commissions equal to 70% of the profit earned from the brokerage transaction. In 2004, Massingill incorporated Seaside, and Seaside assumed Massingill's role as a broker for Coastal. The parties never signed a new agreement, but Seaside operated

---

[1] On a motion for judgment on the pleadings under Rule 12(c), all allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party. *See McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988). This statement of facts therefore reflects that standard by taking all facts alleged in the Second Amended Complaint as true.

consistent with the terms of the 2003 agreement between Coastal and Massingill. Massingill relocated to Wenatchee, Washington in 2007, and Seaside continued to perform according to the 2003 agency agreement.

Throughout Seaside's business relationship with Coastal, Coastal failed to pay Seaside commissions due. Coastal offered various justifications for this failure: Coastal determined that it would retain 40% of the profits on any shipments that fell below a 15% profit margin. Coastal also required that each load shipped generate a 5% profit margin. If the load did not generate the required margin, Coastal would withhold commissions in the amount needed to reach the 5% profit margin. Coastal also required Seaside to retain large sums of commissions in escrow accounts. Under the 2003 agreement, Coastal could place up to $5,000 of Seaside's commissions due into an escrow account to cover potential losses resulting from Seaside's negligence. Coastal withheld commissions in excess of $5,000. On information and belief, Seaside alleges that Coastal never deposited the excess funds into an escrow account. Coastal also imposed a multitude of fees—for example, software access fees, fees for collection on unpaid accounts, etc.—that were offset from Seaside's commissions. Later on, Coastal withheld commissions from Seaside on the basis that Seaside owed Coastal money due to a shipper's failure to pay for carrier services brokered by Seaside.

On two occasions, in 2008 and 2015, Coastal induced Seaside to expand its business. Seaside leased large office space, purchased equipment, and hired additional staff on the understanding that Seaside would continue to work closely with Coastal. Although Seaside trained new freight brokers and permitted them to use Seaside's facilities and equipment, the freight brokers were classified by Coastal as independent contractors rather than Seaside's subagents. When a freight broker completed a brokerage transaction, Coastal paid 30% to the subagent, 25% to Seaside, and retained 40% of the profit for itself. This arrangement cost Seaside $280,486.64 in unpaid commissions. In 2015, the Washington State Department of Labor and Industries audited Coastal for misclassifying its Seaside-based subagents as independent contractors.

**B.     Procedure**

The pleadings in this case thus far involve a web of complaints, counterclaims, third-party claims, and amendments thereto. Seaside filed suit against Coastal in Chelan County Superior Court on March 13, 2017. Coastal removed the action to this Court on April 19, 2017. Coastal answered the complaint and asserted counterclaims against Seaside. Coastal also lodged a third-party complaint against Seaside's principal, Paul Massingill, and Service Driven Transport, Inc. (Service Driven). Seaside answered the counterclaims on June 20, 2017, and Service Driven and Massingill filed their respective answers on June 29,

2017. Massingill also asserted a third-party crossclaim against Coastal's principals, John and Nicole Dunard. ECF No. 19. Seaside amended its complaint on July 28, 2017, and again on May 14, 2018, ECF No. 70, and Defendants moved to dismiss, ECF No. 72.

## LEGAL STANDARD

Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Generally, a court may consider only allegations made in the complaint and the answer; extrinsic factual material may not be taken into account. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir. 1981). However, materials properly attached to a complaint as exhibits may be considered. *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 429 & n.2 (9th Cir. 1978); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Rule 12(c) itself and supporting case law indicate that if matters outside the pleadings are presented to and not excluded by the court, the motion for judgment on the pleadings is converted into a Rule 56 summary judgment motion. *Hal Roach Studios, Inc.*, 896 F.2d at 1550. The fact that such extrinsic material was submitted to the court does not automatically convert a motion for judgment on the pleadings into one for

summary judgment. It must appear that the court relied on the extrinsic evidence in reaching its conclusions before that conversion occurs. *Homart Dev. Co. v. Sigman*, 868 F.2d 1556, 1561–62 (11th Cir. 1989).

Here, the parties submitted declarations in support of their motions and responses. The Court did not rely on these declarations in forming its decision. The only fact outside the Second Amended Complaint of which the Court took notice is the fact that Seaside is not currently registered as a foreign corporation with the Washington Secretary of State. Because registration—or lack thereof—of a foreign corporation with the Washington Secretary of State is an official public record and its contents are not reasonably in dispute, it is appropriately the subject of judicial notice under Federal Rule of Evidence 201(b)(2). *See, e.g.*, *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723 (9th Cir. 2015) (noting that a court may take judicial notice of official information posted on a governmental website, the accuracy of which is not disputed).

## DISCUSSION

**A.     The State of Washington's door-closing statute does not deprive the Court of subject matter jurisdiction.**

Defendants contend that the Court lacks subject matter jurisdiction over this action because Seaside failed to comply with Washington's registration requirements. ECF No. 72 at 6. The State of Washington has a so-called "door closing statute" that prohibits foreign corporations from maintaining any action or

ORDER DENYING MOTION TO DISMISS **-** 6

proceeding in the state unless the corporation has registered with the Secretary of State. Wash. Rev. Code (RCW) § 23.95.510. Such state statutes apply with equal force to federal courts sitting in diversity. *See Woods v. Interstate Realty Co.*, 337 U.S. 535 (1949). Thus, Seaside may pursue non-federal claims in this Court only if it has qualified to do business in Washington in accordance with Washington law.

Seaside concedes that it was not registered to do business in Washington at the time the relevant acts took place or when it filed its complaint. ECF No. 76 at 11. Indeed, Seaside still is not registered to do business in Washington. "But that does not mean, as [Defendants] maintain, that the district court does not have jurisdiction." *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311 (9th Cir. 1982). "No ouster of federal jurisdiction results when, by reason of the policies expressed in *Erie*, a federal court requires that a state's rule barring an action from proceeding in its courts must be applied to bar the action from the federal court." *Id.* (quoting *Feinstein v. Mass. Gen. Hosp.*, 643 F.2d 80, 88 (1st Cir. 1981)).

The distinction between a jurisdictional bar and a substantive state door-closing statute is more than just semantic. RCW 23.95.500(4) provides that "[a] court may stay a proceeding commenced by a foreign entity . . . . until the foreign entity, or its successor, obtains the certificate of registration." If, as Defendants contend, the Court lacked subject matter jurisdiction over this action, the Court

would have no power to stay proceedings until Seaside obtained a certificate of registration. However, because this Court must apply the law as would a state court in this jurisdiction, the Court may stay proceedings pursuant to RCW 23.95.505(4). In the interest of judicial economy, the Court will therefore stay this matter pending Seaside's satisfaction of Washington's foreign business registration requirements. Defendants' motion to dismiss under 12(b)(1) is denied.

**B.  Seaside has stated cognizable tort claims under Washington law.**

Defendants next argue that Seaside's claims for breach of fiduciary duty, unjust enrichment, misrepresentation, conversion, and breach of the covenant of good faith and fair dealing must be dismissed under Missouri's economic loss rule.[2] ECF No. 72 at 9–19. This argument fails, however, because Washington's choice of law analysis directs the Court to apply Washington law to Seaside's tort claims. Because Washington law differs from Missouri on the application of the economic loss rule, Defendants' reliance on Missouri law is inapposite.

This Court, sitting in diversity, applies Washington's choice-of-law rules. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). Washington courts apply a two-step approach to choice of law questions. First, the court determines whether an actual conflict exists between Washington and other

---

[2] In its response, Seaside concedes that its claim for justified reliance should be dismissed. The Court therefore considers this claim abandoned.

applicable state law. *See Burnside v. Simpson Paper Co.*, 864 P.2d 937, 941 (Wash. 1994). If there is no conflict, Washington law applies. If an actual conflict exists, however, the court must then determine which forum has "the most significant relationship" to the action to determine the applicable law. *See Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000–01 (Wash. 1976). For tort claims, Washington courts follow the *Restatement (Second) of Conflict of Laws* (1971), section 145. *Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1217 (Wash. 1994).

Applying Washington's choice of law analysis to this case, it is apparent that an actual conflict exists between Washington and Missouri's laws. An actual conflict exists when the states' laws could produce different outcomes on the same legal issue. *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007). In Missouri, the economic loss rule bars recovery in tort when the plaintiff has suffered only economic loss. In Washington, courts apply the "independent duty doctrine." *See Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010). Under this rule, a plaintiff can bring a tort claim for conduct arising out of a contractual relationship if the defendant owed him or her a duty of care independent of the contract. *Id.*

Because an actual conflict exists, the Court must next determine which state has the "most significant relationship" to the action. *See Johnson*, 555 P.2d at 1000. In making this determination, Washington courts consider the following

contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175–76 (W.D. Wash. 2006) (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)). The Court does not merely count the contacts, but rather considers which contacts are the most significant. *Johnson*, 555 P.2d at 1000.

Here, the analysis favors the application of Washington law. As alleged in the Second Amended Complaint, Seaside is a California corporation doing business in Washington. ECF No. 70 at 2. During the relevant time period, Seaside served as Coastal's primary brokering agent and operated in Washington. *Id.* at 9. Seaside brokered freight in Washington, earned its commissions in Washington, and trained subagents in Washington. The parties' relationship was therefore centered in Washington, and any injury to Seaside—regardless of its origin—affected Seaside in Washington.

Considering these contacts and the relative significance of each, the Court therefore finds that Washington has the most significant relationship to the tort actions. Accordingly, Defendants' motion to dismiss on the basis of Missouri's economic loss rule is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss Second Amended Complaint Pursuant to FRCP 12(c), **ECF No. 72**, is **DENIED**.

2. This matter is **STAYED** pending Seaside's registration with the Washington Secretary of State pursuant to RCW 23.95.505. No later than **September 1, 2018**, or upon receipt of its foreign registration statement, whichever is sooner, Seaside shall **file a status report** with the Court.

**IT IS SO ORDERED**. The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 24th day of July 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge