FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 17, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SEASIDE INLAND TRANSPORT, <br><br>Plaintiff, <br><br>v. <br><br>COASTAL CARRIERS LLC; JOHN DUNARD AND NICOLE DUNARD, husband and wife; COASTAL CARRIERS TRUCK LINES, LLC; JOHN HARREL, a single man; VALKYRIE EXPRESS LLC; and VALKYRIE LOGISTICS LLC, <br><br>Defendants. | No.   2:17-CV-00143-SMJ <br><br>**ORDER DENYING PARTIAL SUMMARY JUDGMENT** |
| COASTAL CARRIERS, LLC, <br><br>Third-Party Plaintiff, <br><br>v. <br><br>PAUL MASSINGILL, a Washington individual; and SERVICE DRIVEN TRANSPORT, INC., a Washington corporation, <br><br>Third-Party Defendants. | |
| PAUL MASSINGILL, <br><br>Third-Party Plaintiff, <br><br>v. <br><br>COASTAL CARRIERS LLC, and JOHN DUNARD AND NICOLE DUNARD, <br><br>Third-Party | |

ORDER DENYING PARTIAL SUMMARY JUDGMENT - 1

Defendants.

The pleadings in this case thus far involve a series of complaints, counterclaims, third-party claims, and amendments. Presently at issue is Coastal Carriers, LLC's ("Coastal") counterclaim against Seaside Inland Transport ("Seaside") and third-party claim against Paul Massingill ("Massingill") and Service Driven Transport, Inc. ("Service Driven"[1]). Seaside, Massingill, and Service Driven (collectively, "Movants") move for partial summary judgment, ECF No. 96, on Coastal's state law breach of contract and alter ego counterclaims and third-party claims. *Id.* Having reviewed the pleadings and the file in this matter, the Court is fully informed and denies the motion.

## I. LEGAL STANDARD

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th

---

[1] While Coastal did not allege breach of contract against Service Driven, Service Driven joins the motion because it may still be liable under the alter ego theory. *See* ECF No. 9 at 7.

Cir. 1982).

The moving party has the initial burden of showing that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & Cty. of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the nonmoving party fails to make such a showing for any of the elements essential to its case as to which it would have the burden of proof at trial, the trial court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court is to view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

## II. BACKGROUND[2]

Paul Massingill is the principal of Seaside, a corporation formed in California and doing business in Wenatchee, Washington. John and Nicole Dunard are the principals of Coastal, a freight brokerage company that connects a shipper of freight with a carrier to haul the freight. ECF No. 109. Coastal bills the shipper and pays the carrier. *Id.*

In January 2, 2002, Massingill (DBA Seaside Inland Transport) and Coastal Carriers, Inc. ("CCI")[3] entered into a written agreement (the "Agreement") for Massingill to be CCI's agent. ECF No. 97. Using CCI's shipping management software, shipper invoicing, carrier payment, account receivable, and other services, Massingill brokered freight shipments in CCI's name. *Id.* Massingill in turn received a percentage of the freight charges that CCI invoiced a shipper. *Id.*

Under the terms of the Agreement, Massingill "must" be liable for "uncollectable freight bills and/or for claims resulting from the errors or omissions of [Massingill] while performing his duties as defined by this Agreement" (the "Liability Clause"). ECF No. 9 at 13. Moreover, Massingill agreed to secure a credit

---

[2] In ruling on the summary judgment motion, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion—Coastal. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

[3] CCI—Coastal's predecessor-in-interest—is not involved in this case.

ORDER DENYING PARTIAL SUMMARY JUDGMENT **-** 4

release from CCI prior to committing to providing service. Failure to receive credit approval would result in his being responsible to CCI for 100% of the full amount of the freight charges (the "Credit Clause"). ECF No. 97 at 3. This agency relationship continued until 2004, when Massingill incorporated Seaside in California. *Id.* at 3–4.

With CCI's knowledge, Seaside assumed Massingill's role as CCI's broker. Although Seaside did not sign anew the Agreement or any other written agreement containing the Liability Clause or Credit Clause, Seaside operated in a manner consistent with the terms of the Agreement. *Id.* at 4.

In 2012, Seaside located Bonerts as a shipper. *Id.* Seaside notified CCI about Bonerts, secured CCI's credit release to broker Bonerts' shipments, and brokered shipments in CCI's name. *Id.* at 5. On October 7, 2015, Mr. Dunard informed Seaside that Bonerts was delinquent on its shipping fees, but nonetheless directed Seaside to continue brokering Bonerts' freight. ECF No. 99-1 at 6. It also increased CCI's credit limit for Bonerts. *Id.*

On April 13, 2016, Massingill emailed Seaside employees to stop further Bonerts shipments until CCI directed otherwise. *Id.* at 9. On April 18, 2016, CCI's Controller JC Harrell emailed Seaside to allow credit release on Bonert. *Id.* Subsequently, CCI directed Seaside to divert Bonerts' freight to a cold storage

warehouse instead of its intended destination. ECF No. 97 at 8. CCI then sold Bonerts' freight—pies—to third parties and retained the money collected. *Id.*

On July 6, 2016, Mr. Dunard formed Coastal as a Missouri limited liability company. *Id.* On November 1, 2016, CCI voluntarily ceased to exist. *Id.* at 9. On March 13, 2017, Mr. Dunard terminated Coastal's business relationship with Seaside after they were unable to enter into a written agreement on the terms of their relationship. *Id.* at 23–24. At the time of termination, there was a balance of uncollectable freight bills procured by Seaside totaling $742,302.67. ECF No. 9 at 3. In accordance with applicable regulatory requirements, Coastal paid the carriers for these uncollectable freight bills. *Id.* Coastal also paid Seaside a commission of $109,828.00 on these uncollectable freight bills. *Id.*

On May 30, 2017, Coastal asserted a counterclaim and third-party claim of breach of contract under the Liability Clause and Credit Clause.[4] ECF No. 9. It argues that Seaside, as well as its alter-ego Massingill and Service Driven, have refused to pay the amount it is owed: $742,306.67 in uncollected freight charges and $109,828.00 in commission reimbursement. *Id.*

### III. DISCUSSION

Movants argue that Coastal's claim is barred by: (1) Washington's Uniform

---

[4] Coastal also claimed a violation of the Computer Fraud and Abuse Act, which is not the subject of this partial summary judgment motion. ECF No. 9 at 7–8.

Business Organizations Code, (2) the Statute of Frauds, (3) the equitable doctrine of estoppel, and (4) the lack of evidence of breach under the Liability Clause and Credit Clause. ECF No. 96. The Court addresses these arguments in turn.

**A.     Washington's Uniform Business Organizations Code**

A foreign entity doing business in Washington "may not maintain an action or proceeding in this state unless it is registered to do business in [the] state and has paid [] [the] state all fees and penalties for the years, or parts thereof, during which it did business . . . without having registered." Wash. Rev. Code ("RCW") 23.95.505(2). "Proceeding" includes a civil suit. RCW 23.95.105(29). Moreover, this rule applies to a foreign entity's successor. RCW 23.95.505(3).

Movants argue that because Coastal has failed to register as a foreign entity doing business in Washington, it may not maintain a proceeding in the state. They request a stay of proceedings until Coastal registers.

Coastal responds that Movants failed to assert this affirmative defense in their responsive pleading and thus, waived it. ECF No. 108 at 7. Coastal alternatively argues that it engaged in interstate commerce by using independent contractors and so, was not subject to the registration requirement. *Id.*

**1.     Waiver**

The Court rejects the waiver argument. While state law defines the nature of an affirmative defense in a diversity action, the Federal Rules of Civil Procedure

provide the manner and time in which the defense is raised and when waiver occurs. *Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982) (per curiam).

The Ninth Circuit "liberalized" the requirement that affirmative defenses be raised in an initial pleading: the failure to assert an affirmative defense in the initial pleading does not necessarily waive the defense. *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (allowing the defendant to raise the statute of limitations defense for the first time in a summary judgment motion); *see also Healy Tibbitts*, 679 F.2d at 804 (holding that absent prejudice, a party may raise an affirmative defense in a summary judgment motion). Here, Coastal does not claim prejudice. Therefore, the waiver argument is unavailing.

### 2. Doing business in Washington

A foreign entity does not "do business" in Washington when it sells through independent contractors or does business in interstate commerce. RCW 23.95.520(1)(e) and (1)(f). Coastal argues that several facts support its argument that it did not do business in Washington: (1) it is based in Missouri, (2) it engaged in interstate commerce by using independent contractors throughout the country, (3) it did not have employees in Washington, and (4) it does not have any offices or property in the state. ECF No. 108 at 7.

These facts, Coastal seems to argue, *ipso facto* lead to the conclusion that it falls under the exceptions in RCW 23.95.520(1)(e) and (1)(f). The Court disagrees. For example, Coastal fails to explain, through legal authority or any argument, why it should be considered a "seller" under RCW 23.95.520(1)(e). Moreover, just because it did not have employees or offices, or its principal place of business in Washington, does not mean that it was engaged in interstate commerce; in such cases, then, almost all "foreign" entities would automatically fall under this exception. *See* RCW 23.95.105(10) (defining "foreign" as being governed by the law of another jurisdiction). Because Coastal fails to meet its shifted burden, the Court concludes that allowing it to proceed under state law is improper. Accordingly, the Court stays Coastal's counterclaim and third-party claim against Movants until it obtains a certificate of registration. *See* RCW 23.95.505(4).

**B.     Washington Statute of Frauds**

Movants argue that the Washington Statute of Frauds precludes Coastal from claiming breach of contract because Seaside signed no writing. ECF No. 96 at 14. In response, Coastal argues that there was a novation, or a new contractual relation, between Seaside and Coastal. ECF No. 48 at 10. A novation "may be either the substitution of a new obligation for an old one between the same parties with intent to displace the old obligation with the new, or the substitution of a new debtor for the old one with intent to discharge the old debtor, or the substitution of a new

creditor with intent to transfer the rights of the old creditor to the new." *Macpherson v. Franco*, 34 Wn. 2d 179, 182 (1949).

Indeed, as evidence of novation, Seaside continued to operate under the terms of the Agreement, and received its commission accordingly. Its own attorney, in a letter to Mr. Dunard following the termination of Seaside and Coastal's business relationship, cited to the Agreement as having been in effect for fifteen years up until March 13, 2017. ECF No. 50 at 11. Additionally, Massingill signed the Agreement himself, "DBA Seaside Inland Transport." As such, the Agreement was a sufficient writing, and Movants cannot assert the Statute of Frauds defense.[5]

## C. Equitable Estoppel

Movants claim that equitable estoppel applies because Seaside brokered Bonerts' shipments only as expressly directed by CCI. ECF No. 112 at 9. Under Local Rule 56.1(d), the Court may assume that Movants' facts are uncontroverted if Coastal does not file, separately from the memorandum of law, the specific facts that establish a genuine dispute. Here, Coastal did not file a separate statement of facts to clarify or dispute any of Movants' facts and as such, the Court accepts Movants' facts without controversy.[6]

---

[5] In any case, Movants fail to establish that a writing was even required under the Washington Statute of Frauds.

[6] Coastal cites its previously-submitted Statement of Facts, ECF No. 49, in opposition to a previous partial summary judgment motion. However, the Court has already stricken that partial summary judgment motion, which struck the linked

ORDER DENYING PARTIAL SUMMARY JUDGMENT **-** 10

Equitable estoppel requires: (1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the relying party if the Court allows the first party to contradict or repudiate the prior act, statement, or admission. *Robinson v. City of Seattle*, 119 Wash. 2d 34, 82 (1992). Because estoppel is not favored, the party asserting estoppel must prove each element by clear, cogent and convincing evidence. *Colonial Imps., Inc. v. Carlton Nw., Inc.*, 121 Wash. 2d 726, 734 (1993).

Here, the evidence in the record shows that (1) Coastal authorized Seaside to broker Bonerts' freight, and (2) Seaside did so accordingly in reliance on Coastal's instruction. However, (3) Movants can't show injury. Coastal does not claim that it was Seaside's act of brokering freight for Bonerts that makes Seaside liable—instead, it was Seaside's breach of the Liability Clause or Credit Clause. In other words, while the Court agrees with Movants that Coastal may not challenge Seaside's act of brokering Bonerts' freight, it is not doing so here and thus, is not estopped from asserting its breach of contract claim. Coastal still has to prove such a breach. Therefore, the Court rejects the equitable estoppel argument.

**D.     Evidence of breach of the Liability Clause or Credit Clause**

---

documents as well. ECF No. 55 at 6 ("Because the Court's decision on the instant motion could materially change the analysis of the parties' summary judgment arguments, the Court strikes the summary judgment motion.").

Lastly, Movants make the final argument that Coastal failed to produce evidence of Seaside's errors/omissions, or failure to secure CCI's credit release, in violation of the Liability Clause and Credit Clause, respectively. They argue Seaside produced evidence that it secured CCI's credit release for Bonerts in May 2012, and that CCI increased Bonerts' credit limit in October 2015. ECF No. 96 at 16.

Coastal responds persuasively that this evidence does not establish as a matter of law that Seaside is not liable for Bonerts' debt, i.e., that it did not err or omit. Evidence that Seaside secured CCI's credit release during standalone periods in time do not account for the entirety of the debt that Bonerts failed to pay. Moreover, even with Seaside's securement of CCI's credit release, this does not establish that Coastal did not subsequently err or omit. The two clauses are not mutually exclusive. Because Seaside's errors and omissions could have arisen after securing credit release, the breach of contract could have arisen after that. Because Movants fail to meet their burden to show that they are entitled to judgment as a matter of law, partial summary judgment in their favor is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Seaside's, Massingill's, and Service Driven's Motion for Partial Summary Judgment, **ECF No. 96**, is **DENIED**.

**2.** Coastal's counterclaim and third-party claim is **STAYED** until it obtains a certificate of registration with the Washington Secretary of State pursuant to RCW 23.95.505. No later than **October 17, 2018**, or upon receipt of the certificate, whichever is sooner, Coastal shall file a status report, along with a copy of the certificate and request to lift the stay. If Coastal does not intend to obtain a certificate of registration, it shall file by **October 17, 2018** a motion for dismissal, or face involuntary dismissal.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 17th day of September 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge