FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SEASIDE INLAND TRANSPORT,

                    Plaintiff,

     v.

COASTAL CARRIERS LLC; JOHN
DUNARD AND NICOLE DUNARD,
husband and wife; COASTAL
CARRIERS TRUCK LINES, LLC;
JOHN HARREL, a single man;
VALKYRIE EXPRESS LLC; and
VALKYRIE LOGISTICS LLC,

                    Defendants.

No.   2:17-CV-00143-SMJ

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS**

Before the Court, without oral argument, is Defendants John Harrell; Coastal Carriers Truck Lines, LLC; Valkyrie Express, LLC; and Valkyrie Logistics, LLC's (collectively, "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, ECF No. 119. Defendants assert the Third Amended Complaint should be dismissed for lack of personal jurisdiction and failure to state a claim. Plaintiff Seaside Inland Transport ("Seaside") opposes the motion. ECF No. 125. Having reviewed the pleadings and the file in this matter, the Court is fully informed and grants the motion.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS **-** 1

# I.    BACKGROUND

Paul Massingill is the principal of Seaside, a corporation formed in California and doing business in Wenatchee, Washington. ECF No. 111 at 2. John and Nicole Dunard are the principals of Coastal Carriers, LLC ("Coastal"); Coastal Carriers Truck Lines, LLC ("Coastal Truck"); Valkyrie Express, LLC ("Valkyrie Express"); and Valkyrie Logistics, LLC ("Valkyrie Logistics"). *Id.* at 3. John Harrell ("Harrell") is the Controller of Coastal and Coastal Truck. *Id.*

In January 2, 2002, Massingill (DBA Seaside) and Coastal Carriers, Inc.[1] entered into a written agreement for Massingill to be Coastal's agent. ECF No. 111-1. Under the agreement, Massingill brokered freight in Coastal's name and received commission from the freight charges that Coastal invoiced a shipper. ECF No. 111 at 7. In 2004, Massingill incorporated Seaside and ceased personally brokering freight for Coastal. *Id.* at 8. With Coastal's knowledge, Seaside assumed Massingill's role as Coastal's broker. *Id.* Although Seaside did not sign a new agreement, Seaside operated in a manner consistent with the terms of the agreement. *Id.*

In 2006, Mr. Dunard acquired his own fleet of trucks that he operated under Coastal Truck. *Id.* at 10. Coastal, Coastal Truck, Mr. Dunard, and Harrell mandated

---

[1] Coastal Carriers, Inc. ceased to operate in 2016, and Coastal Carriers LLC assumed its business operations. As such, both are collectively referred to as Coastal. ECF No. 111 at 4.

that Seaside find customers with the freight to load on Coastal Truck's trucks. They also charged and received carrier costs in excess of prevailing market prices, which resulted in smaller commission payments to Seaside. *Id.* Additionally, they prevented Seaside-generated shippers or customers from using Seaside as their freight broker.

Coastal also unilaterally imposed a six-month rule. *Id.* at 12. If a customer had not moved shipments through Seaside within six months, whether or not Seaside was in contact with the customer, Mr. Dunard; Harrell; and Coastal claimed the customer as Coastal's own and stopped paying Seaside commissions. *Id.* Only Mr. Dunard, Harrell, and Coastal controlled the administrative access to the McLeod freight shipping software where Seaside uploaded shipper, freight, and carrier information, so while they could monitor the activity of a Seaside-generated customer, Seaside could not. *Id.*

Moreover, Seaside was required to secure Coastal's permission to move a customer's shipment. *Id.* at 13. Mr. Dunard, Harrell, and Coastal fraudulently denied permission by citing a customer's alleged credit risk or other issues. *Id.* They would then contact Coastal Truck, Valkyrie Express, or Valkyrie Logistics to carry the customer's freight and pay Seaside no commission. *Id.* Coastal, Mr. Dunard, Harrell, and Coastal Truck denied Seaside information concerning the freight that Coastal Truck, Valkyrie Express, or Valkyrie Logistics carried for Seaside-

generated customers. *Id.* at 14.

In 2008 and 2015, Seaside's success brokering freight for Coastal led to its expansion. It expended money for office space, equipment, marketing, and staff. *Id.* at 14–15. At Mr. Dunard, Harrell, and Coastal's demand, Seaside hired individuals to broker freight, i.e., subagents, who were to be paid commissions. *Id.* at 15. The subagents worked in Seaside's offices, using Seaside's equipment, and reported to Massingill. *Id.* Seaside paid for the subagents' training and retention costs that included bonuses or rewards. *Id.* Mr. Dunard, Harrell, and Coastal never reimbursed Seaside for such overhead costs. *Id.* Coastal then deducted the subagents' payroll expenses from Seaside's commissions. *Id.* When a subagent generated a freight shipment, Coastal paid him or her 25% commission and Seaside 30% commission. *Id.*

Seaside and Coastal's business relationship terminated on March 13, 2017. ECF No. 111-4. Seaside estimates its unpaid commissions to total around $1,648,857.66. ECF No. 111 at 17, 21.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(2)

In resolving a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) on written materials, the Court accepts uncontroverted facts in the Third Amended Complaint as true and resolves conflicts presented in affidavits in

Plaintiff's favor. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Courts may consider evidence presented in affidavits and declarations to determine whether personal jurisdiction exists over defendants. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where a defendant's motion is based on a written record and no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdictional facts. *Picot v. Weston*, 780 F.3d 1206, 1210 (9th Cir. 2015).

The Court exercises personal jurisdiction over Defendants if (1) it is permitted by the state's long-arm statute and (2) the exercise of jurisdiction does not violate federal due process. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

The Court first "begins its personal jurisdiction analysis with the long-arm statute of the state in which the court sits." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the Court's personal jurisdiction to the broadest reach permitted by the United States Constitution. *See* Wash. Rev. Code ("RCW") § 4.28.185. Because Washington's long-arm statute is coextensive with federal due process requirements, the jurisdictional analysis is the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

Due process requires that a defendant "have certain minimum contacts with

[the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945); *see Walden v. Fiore*, 571 U.S. 277, 283 (2014).

The strength of "minimum contacts" required depends on the type of jurisdiction invoked: general, "all-purpose," or specific, "conduct-linked." *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014).

## 1. General Jurisdiction

To establish general jurisdiction, a plaintiff must demonstrate that the defendant has continuous and systematic contacts sufficient to approximate physical presence in the state. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). The standard is "exacting" because it would allow a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world. *Schwarzenegger*, 374 F.3d at 801.

A foreign entity must have affiliations so continuous and systematic as to render it "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (corporations); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (limited liability companies). Factors to consider are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. *See Hirsch v. Blue Cross, Blue Shield of Kansas*

*City*, 800 F.2d 1474, 1478 (9th Cir. 1986).

## 2. Specific Jurisdiction

For the Court to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Three requirements must be satisfied: (1) the defendant either "purposefully direct[s]"[2] its activities or "purposefully avails"[3] itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

The requisite minimum contacts must arise out of contacts that the defendant itself creates with the forum state, and not the defendant's contacts with persons who reside there. *Walden*, 571 U.S. at 284. While physical presence in the forum state is irrelevant, "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact. *Id.*

## B. Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing

---

[2] A purposeful direction analysis is generally used in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802.

[3] A purposeful availment analysis is generally used in suits sounding in contract. *Id.*

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff and draws all reasonable inferences in the plaintiff's favor. *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). The Court accepts as true all factual allegations contained in the complaint. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

Defendants argue they are not subject to the Court's specific or general

jurisdiction in Washington. ECF No. 119. They alternatively argue that Seaside fails to state a claim against them. *Id.* For the reasons noted below, the Court agrees.

## A.    Coastal Truck

### 1.    Personal Jurisdiction

Seaside posits the Court has both general and specific jurisdiction over Coastal Truck. ECF No. 125. It asserts Coastal Truck continuously operated in Washington since 2007 and employed Seaside and about 56 people to broker freight. Coastal Truck also carried freight in and out of Washington.

Seaside partly relies on "alter ego" imputed jurisdiction, as Coastal is actually the entity that employed Seaside and 56 subagents, not Coastal Truck. *See* ECF Nos. 111-1 at 2; 111 at 4. Seaside further alleges that the two entities "have the same ownership, management, employees or agents" and work from the same offices located in Missouri. ECF No. 111 at 4–5.

#### a.    General Jurisdiction

The Supreme Court has rejected a theory that would permit the exercise of general jurisdiction in every state in which a corporation engages in a substantial, continuous, and systematic course of business. *Daimler*, 571 U.S. at 137–38. And simply "doing business" is insufficient. *Id.* at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

Here, Seaside does not sufficiently allege factual content for the Court to

conclude general jurisdiction exists. Seaside's assertions of Coastal Truck's activities do not render it "essentially at home" in Washington, as its activities there are limited in comparison to its activities in Missouri, where it maintains its principal place of business. *See* ECF No. 120; *Ranza*, 793 F.3d at 1070 (rejecting general jurisdiction where a limited liability company sent employees and products and engaged in commercial transactions in Oregon, but had the vast majority of employees and business activities in Europe).

Moreover, courts have limited the "alter ego" theory of imputed jurisdiction to the parent-subsidiary context, and Seaside fails to plead sufficient facts or cite legal authority saying otherwise. *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir. 2017). As such, the Court rejects this argument.

### b.    Specific Jurisdiction

However, Seaside has met its prima facie burden to show the Court may exercise specific jurisdiction over Coastal Truck. Because Seaside's claims sound in both contract and tort, either the purposeful availment or purposeful direction test applies. The stronger argument is that Coastal Truck purposefully availed itself of the privilege of doing business in Washington, such as executing employment contracts and delivering freight. *See Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum,

such as executing or performing a contract there."). Physical entry into the forum state through an agent, goods, or some other means is also sufficient relevant contact. *See Walden*, 571 U.S. at 284.

Here, Coastal Truck availed itself of the privilege of conducting activities within the forum state, i.e., profiting from the shipment of goods. While Coastal Truck argues that it has no offices or employees in Washington and had no contact with Washington or Seaside, Seaside alleges that it and other agents in Washington were employed by Coastal Truck, and that Coastal Truck had such agents hold themselves out to be its employees, ECF No. 125 at 8. Indeed, at least one exhibit indicates that Massingill signed his email signature line as the Director of Operations of Coastal <u>and</u> Coastal Truck. ECF No. 126-1 at 12. Moreover, it appears Coastal Truck picked up or delivered freight in Washington. *Id.* at 2–3. As the Court must resolve conflicts presented in affidavits in Seaside's favor, *see Mavrix*, 647 F.3d at 1223, the Court finds the minimum contact element met.

The second element for relatedness is also met, because Seaside's claims arise out of or relate to Coastal Truck's employment of agents and delivery of freight in Washington.

Lastly, the exercise of jurisdiction is reasonable. The defendant has the burden of demonstrating unreasonableness: it must be "compelling." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). Here, the Court concludes the

*Burger King* factors[4] weigh in favor of reasonableness, and Defendants do not set forth any arguments to suggest otherwise. As such, they do not meet their burden and the exercise of jurisdiction is reasonable. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1089 (9th Cir. 2000) (finding reasonableness where the defendant attempted no showing of the *Burger King* factors); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (presuming reasonableness where minimum contacts are met).

Therefore, the Court exercises personal jurisdiction over Coastal Truck.

### 2.    Failure to State a Claim

The Court now turns to whether Seaside's Third Amended Complaint states a claim against Coastal Truck.

#### a.    Fraud, Interference with Business Expectancy, and Conversion

Seaside claims Coastal Truck defrauded it by "making false statements, withholding material information, using Seaside's trade secrets and other confidential information, and/or failing to account to Seaside for the purpose of

---

[4] The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Burger King*, 471 U.S. at 476–77.

intentionally not paying Seaside commissions due and owing and taking Seaside's generated customers." ECF No. 111 at 25.

Seaside further claims that Coastal Truck "unlawfully interfered with Seaside's business operations by unlawfully soliciting and/or taking the business of Seaside, causing Seaside to wind up its business affairs, lose business value, and suffer damages." *Id.* at 23. Moreover, Coastal Truck allegedly "converted money due [to] Seaside." *Id.* at 21.

However, Seaside's claims are deficient because the Court cannot reasonably infer that Coastal Truck is liable for these alleged torts. Seaside alleges that Coastal, Mr. Dunard, and Harrell induced it to upload information on the software system, and then shared that information with Coastal Truck. Coastal Truck received that information and made contact with Seaside-generated freight and shippers, but it did not make any representations[5] to Seaside. Moreover, Seaside presents no facts indicating that Seaside had valid contractual relationships or business expectancies with the customers whose information it uploaded onto the software.[6] And the

_____

[5] The elements of fraud include: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. *Adams v. King County*, 164 Wash. 2d 640, 662 (2008).

[6] The elements of tortious interference are: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or

complaint is devoid of allegations indicating that Coastal Truck had an improper purpose or used improper means in contacting those customers. Coastal Truck was certainly entitled to compete, especially if the customers had not moved shipments through Seaside for six months. *See id.* at 12.

Additionally, there are no allegations that Coastal Truck "intentionally interfere[d] with [the money] belonging to [Seaside], either by taking or unlawfully retaining it." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash. 2d 601, 619 (2009) (discussing conversion); *see* ECF No. 125 at 15 (claiming that the chattel converted was money). Seaside is not the automatic "rightful owner" of its customers' business, or the money derived from it. *See Alhadeff*, 167 Wash. 2d at 619. Nor is it evident how Coastal Truck took or unlawfully retained Seaside's money. *See id.*

Because Seaside's threadbare allegations fail to show that it is entitled to relief, the Court dismisses the fraud, tortious interference, and conversion claims against Coastal Truck without leave to amend.

### b. Alter Ego

Seaside alleges Coastal Truck, among others, is the alter ego of Mr. Dunard. ECF No. 111 at 27. "Where a private person so dominates and controls a corporation

---

termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wash. 2d 133, 157 (1997).

that such corporation is his alter ego, a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same." *Pohlman Inv. Co. v. Va. City Gold Mining Co.*, 184 Wash. 273, 283 (1935).

Mr. Dunard is one of Coastal Truck's two principals. ECF No. 111 at 3. Seaside submits exhibits of Mr. Dunard's communications, but they relate to Coastal, not Coastal Truck. *See, e.g.*, ECF No. 111-1 at 8. Having considered the pleadings and affidavits, the Court cannot reasonably infer that Mr. Dunard dominates and controls Coastal Truck to the extent that his signature and actions are "tantamount to" Coastal Truck's signature and actions. *See Standard Fire Ins. Co. v. Blakeslee*, 54 Wash. App. 1, 7 (1989). In fact, the exhibits show that Mr. Dunard never even signed a communication on Coastal Truck's behalf, although Harrell certainly did. *See* ECF No. 126-1 at 5, 7.

Accordingly, the Court dismisses Seaside's alter ego claim against Coastal Truck without leave to amend.

### c. Unjust Enrichment

Seaside alleges Coastal Truck was unjustly enriched by its "wrongful retention of money due Seaside, and/or failure to pay commissions, and/or by causing Seaside to pay or incur liability in excess of $75,000.00 to increase the size of Seaside's business operations." ECF No. 111 at 22.

Seaside's inclusion of Coastal Truck in its unjust enrichment claim is

puzzling. While Seaside pled that Coastal failed to pay commissions and Coastal directed Seaside to increase the size of its business operations, Coastal Truck was never once mentioned. And yet, Seaside includes Coastal Truck in the list of those who have allegedly been unjustly enriched. *Id.*

As Seaside fails to state a claim for relief that is plausible on its face, the Court dismisses the unjust enrichment claim against Coastal Truck without leave to amend.

### d.    Civil Conspiracy

Seaside alleges Defendants (including Coastal Truck), Coastal, and Mr. Dunard "agreed to combine their efforts to broker and/or transport freight, using information Seaside uploaded onto the McLeod freight shipping software these Defendants shared, without notifying Seaside and without paying Seaside commissions it was due." *Id.* at 26.

Putting aside Seaside's conclusory allegation that there was an agreement, the complaint lacks factual content indicating an agreement, either direct or circumstantial. *See Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp.*, 114 Wn. App. 151 (2002). As such, the Court dismisses the civil conspiracy claim against Coastal Truck with leave to amend.

### e.    Trade Secrets Claims

Seaside alleges Coastal Truck "willfully, maliciously, and in bad faith

misappropriated and used Seaside's trade secrets (e.g. its customer lists, marketing, and its shipper and carrier bidding and pricing processes, practices, and methods) in violation of the Defend Trade Secrets Act, 18 USC § 1836, causing Seaside to suffer and to continue to suffer injury." ECF No. 111 at 26–27. Seaside claims this also violated Washington State's Uniform Trade Secrets Act. *Id.* at 27.

Seaside first fails to plead why its customer lists and freight and carrier information were trade secrets, especially when others could readily ascertain such information—just as Seaside did. *See* 18 U.S.C. § 1836, RCW 19.108.010(4). More importantly, however, Seaside fails to allege why Coastal Truck is liable for misappropriation, when it explicitly claims that Coastal, Mr. Dunard, and Harrell induced Seaside to disclose such information onto the database—not Coastal Truck.

Even assuming arguendo that Seaside wanted to hold Coastal Truck liable for its actions in concert with them, the Court rejects, as mentioned above, a conspiracy claim. As such, the Court disregards the naked assertions of "mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, and dismisses the trade secrets claims with leave to amend.

### f.    Injunctive Relief, Constructive Trust, and Accounting

Because Seaside fails to state a proper claim against Coastal Truck, the Court rejects any relief and remedies as applied to it. Accordingly, Coastal Truck is dismissed from the action and the Court grants Defendants' motion to dismiss.

**B. Valkyrie Express, LLC; and Valkyrie Logistics, LLC**

**1. Personal Jurisdiction**

Seaside contends the Court has specific personal jurisdiction over Valkyrie Express and Valkyrie Logistics ("the Valkyrie companies"[7]) because they are "alter egos"[8] of Coastal, Coastal Truck, Harrell, and the Dunards, and "worked in concert." ECF No. 111 at 4–5. Seaside alleges that the Dunards made Mrs. Dunard the principal of the Valkyrie companies "to secure freight shipping business that prefers female ownership." *Id.* at 5.

However, Seaside fails to plead sufficient facts to demonstrate the Court may exercise specific personal jurisdiction over the Valkyrie companies. Not only does Seaside fail to show how the Valkyrie companies purposefully directed their activities or availed themselves of Washington's benefits, but it also fails to show that its tort and contract claims arose out of the Valkyrie companies' activities—securing business that prefers female ownership. In other words, Seaside's claims would still have arisen "but for" their alleged activities. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (applying the "but for" test for the relatedness prong). Unlike there was for Coastal Truck, there is no indication here that the

---

[7] The Valkyrie companies are both Missouri limited liability companies with their principal place of business in Wentzville, Missouri. ECF No. 111 at 3.

[8] For the same reasons discussed above, the Court again rejects this imputed jurisdiction argument under the alter ego theory.

Valkyrie companies delivered goods in Washington or employed agents in Washington.

Seaside attempts to save the deficiency through its responsive pleading, newly asserting that the Valkyrie companies subjected themselves to the Court's personal jurisdiction "through their agents' (Coastal Carriers, Coastal Carriers Truck Lines, and Dunard) contacts." ECF No. 125 at 9. The Valkyrie companies also "had Seaside upload its confidential information on the McLeod Software System from inside Washington State." *Id.* at 10.

Even crediting as true Seaside's version of the facts, Seaside still fails to make out a prima facie case for an agency relationship: that an agent acted "on the principal's behalf and subject to the principal's control." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (concluding specific jurisdiction was lacking because the appellants failed to make out a prima facie case for an agency relationship). And in any case, Seaside fails to show how the agency theory extends beyond the parent-subsidiary context. *See id.* at 1022.

Accordingly, the Court lacks personal jurisdiction over the Valkyrie companies and dismisses the complaint in its entirety as to them.

**C. John Harrell**

**1. Personal Jurisdiction**

Seaside posits the Court has specific jurisdiction over Harrell, who "visited

Washington State in his controller capacity at least 6 times" to check on the work of Coastal and Coastal Truck's agents. ECF No. 125. "Harrell also repeatedly reached into Washington State via phone, email, and instant messenger to communicate, on about a daily basis," with Coastal and Coastal Truck's agents. *Id.* With this, Seaside concludes "Harrell's direct contacts with Washington State give this Court personal jurisdiction." *Id.*

The Court disagrees. Harrell's contacts with persons who reside in Washington is irrelevant. *See Walden*, 571 U.S. at 284. He did not create any contacts in Washington, and did not have a "substantial connection" with Washington. *See id.* And as with the Valkyrie companies, Seaside fails to show how its claims relate to Harrell's business trips to Washington and contact with agents there. *See Ballard*, 65 F.3d at 1500 (noting that a defendant who took 24 business trips unrelated to the cause of action weighed against the exercise of specific jurisdiction). Seaside does not claim that its entire business relationship with Coastal and Coastal Truck was unlawful. Seaside's claims would still have arisen but for Harrell's business trips and electronic communication.

As such, the Court declines to exercise personal jurisdiction over Harrell and dismisses the complaint in its entirety as to him.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and

Failure to State a Claim, **ECF No. 119**, is **GRANTED**.

2. The Third Amended Complaint is **DISMISSED** as to Defendants John Harrell; Coastal Carriers Truck Lines, LLC; Valkyrie Express, LLC; and Valkyrie Logistics, LLC.

   *A.* All claims against Defendants John Harrell; Valkyrie Express, LLC; and Valkyrie Logistics, LLC are dismissed **WITH PREJUDICE**.

   *B.* The civil conspiracy and trade secrets claims against Defendant Coastal Carriers Truck Lines, LLC are dismissed **WITHOUT PREJUDICE**. All remaining claims against Defendant Coastal Carriers Truck Lines, LLC are dismissed **WITH PREJUDICE**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 12th day of November 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge