FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 08, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SEASIDE INLAND TRANSPORT,<br><br>    Plaintiff,<br><br>    v.<br><br>COASTAL CARRIERS LLC; and JOHN DUNARD AND NICOLE DUNARD, husband and wife,<br><br>    Defendants. | No.  2:17-cv-00143-SMJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART RENEWED MOTION FOR PROTECTIVE ORDER** |
| COASTAL CARRIERS, LLC,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>PAUL MASSINGILL, a Washington individual; and SERVICE DRIVEN TRANSPORT, INC., a Washington corporation,<br><br>    Third-Party Defendants. | |
| PAUL MASSINGILL,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>COASTAL CARRIERS LLC, and JOHN DUNARD AND NICOLE DUNARD,<br><br>    Third-Party Defendants. | |

Before the Court, without oral argument, is Defendant Coastal Carriers, LLC's Renewed Motion for Protective Order, ECF No. 203. Coastal Carriers, LLC ("Coastal") requests a protective order prohibiting Plaintiff Seaside Inland Transport ("Seaside") from continuing the deposition of Coastal's Federal Rule of Civil Procedure 30(b)(6) witness on nineteen topics. *Id.* Seaside opposes the motion. ECF No. 217.

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery on any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Discovery need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1).

Rule 26(c) permits the Court to limit discovery via protective order when a party seeking the order establishes good cause for protection from "annoyance, embarrassment, oppression, or undue burden or expense . . . ." The burden of persuasion is on the party seeking the protective order to show good cause by "demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004).

Here, Coastal objects to nineteen deposition topics: topics 9–10, 42, and 53–54 on grounds of relevance, topics 32–35 on grounds of being outside the scope of knowledge, and topics 12–13, 21, 24–26, 30–31, 36, and 62 on grounds of being unduly burdensome and non-proportional. ECF No. 203. The Court addresses each category in turn.

**A.    Relevance: Topics 9–10, 42, and 53–54.**

Topics 9 and 10 "request[] information concerning the formation of Coastal and its predecessor, Coastal Carriers, Inc., and the growth of both companies, including increased revenues and employee headcount." ECF No. 203 at 3. Coastal objects to the relevance of such information because this "case does not concern Coastal's formation, the formation of its predecessor, or the growth of either company." *Id.* at 4.

However, Seaside clarifies that it seeks this information because it believes "Coastal formed because of and after the Washington Department of Labor and Industries audited Coastal" for operating in Washington and not paying its taxes." ECF No. 217 at 6. "Seaside is suing Coastal for monies that it paid" as a result of Coastal's audit and argues that it helped "Coastal's brokerage business grow by finding customer and uploading the customer and customer related freight information onto Coastal's McLeod software system." *Id.* at 5–6. The Court determines that such information certainly has the tendency to make Coastal's

liability more or less probable and is thus relevant.

Topic 42 requests information about "the salary, bonuses, and benefits of [Coastal's] 'management personnel.'" ECF No. 203 at 4. Coastal objects because the salaries of other employees are not relevant to whether Paul Massingill was an employee, as he claims, or an agent who earned commissions, as Coastal contends. *Id.*

Seaside contends the information is relevant to its claim for unpaid wages "in the amount of $150,000 per year for work as Coastal's Director of West Coast Operations." ECF No. 217 at 6. While the Court agrees that information on what the Missouri Director of Operations—Seaside's alleged counterpart—was being paid is relevant to determine how much Massingill should have been paid, the compensation information for other management personnel is irrelevant.

Topics 53 and 54 request every instance where Coastal "sued or otherwise sought recovery from an agent or employee" for unpaid freight brokerage fees or recovery of commissions paid. ECF No. 166-1 at 13. Seaside asserts such information is "directly relevant to establish whether Coastal had a pattern or practice of suing or seeking to recover from its agent or employee freight brokers unpaid freight broker fees or recovery paid commissions, as Coastal now does with Seaside." ECF No. 217 at 7. The Court agrees with Coastal that such information is irrelevant, and unlikely to lead to relevant information. While Seaside additionally

argues that such information "could lead to relevant information as to the terms of Coastal's contract with Seaside, the parties' expectations or intent, and whether Seaside is liable for any of Coastal's unpaid Bonerts' debt or commission reimbursement," the Court is puzzled as to why information of other litigation could bear meaning to the applicable contract, expectations, and liability *in this case*. Accordingly, the Court determines such information is irrelevant.

B.   **Outside the scope of knowledge: Topics 32–35.**

Topics 32–35 seek information concerning companies other than Coastal. ECF No. 203 at 4. They request information concerning the "loads brokered or hauled by Coastal Carriers Truck Lines, Valkyrie Express, and Valkyrie Logistics, regardless of whether Coastal brokered any of those loads." *Id.* "Coastal does not know, and cannot be expected to testify concerning loads brokered and shipped by other companies." *Id.* These companies are "related entities" that Seaside asserts are involved in civil conspiracy and trade secrets violations alongside Coastal. ECF No. 217 at 8.

Seaside responds that this is not an appropriate basis for a protective order, which is correct. And the Court rejects the argument that such information does not have a reasonable or rational relationship to Coastal's operation, as Seaside asserts that the companies are coconspirators. Consequently, Coastal is unable to meet its burden of persuasion to show good cause by "demonstrating harm or prejudice that

will result from the discovery." *Rivera*, 364 F.3d at 1064. Accordingly, the Court declines to enter a protective order for this topic. Nonetheless, if Coastal's Rule 30(b)(6) witness is questioned on these topics during the deposition and could not reasonably ascertain the information, he may truthfully respond that such information is unknown. *See* Fed. R. Civ. P 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization.").

C. **Unduly burdensome and non-proportional: Topics 12–13, 21, 24–26, 30–31, 36, and 62.**

Topic 12 requests that Coastal "identify every customer to which it applied what has been referred to in this litigation as the 'six month rule,' which was a policy Coastal implemented to resolve disagreements over the solicitation of customers by agents." ECF No. 203 at 5. Coastal notes that it "did not maintain records" of the times it informed agents that they could or could not solicit a customer. *Id.* It argues that it "cannot possibly obtain this information." *Id.*

But even if it did not keep formal records, surely it can reasonably attempt to locate any existing records, such as email communications or other written correspondence, that identifies such customers or shippers. Coastal does not articulate why it would be unduly burdensome to do so, or that it would face any prejudice. The mere anticipation that it would probably be unable to identify "every" customer is insufficient to require a broad protective order prohibiting inquiry into such a topic, which is undeniably relevant. As such, the Court allows

Coastal's witness to be questioned on this topic, for which he must respond with the information that is reasonably available.

However, Topic 13 requests that Coastal "identify the amount of commissions" Coastal "did not pay to Seaside due to the implementation of the six-month rule and the method for reaching this amount, including identifying the name of the shipper or customer, the total amount of shipper fees charged thereto, the total amount of carrier costs . . . paid, the total amount of any commissions paid and to whom, and the total net amount." ECF No. 166-1 at 8. The Court agrees that this topic is "particularly problematic." ECF No. 203 at 5. As opposed to broadly identifying customers, this would require Coastal to identify every *instance* where the rule was applied, specifically for customers that Seaside claims were its own.

Moreover, Coastal contends that calculating commissions is a "time-intensive and fact dependent analysis." *Id.* at 6. Commissions depend on the commission rate, the profit, and the expenses incurred, all of which vary by load. *Id.* And Seaside does not even identify which loads it considered its own. *Id.* Because any benefit is unlikely to outweigh the burden on Coastal, the Court prohibits questioning on this topic.

For similar reasons, the Court agrees with Coastal on Topic 21, which requests to reveal "every commission paid by Coastal to Seaside from 2002 to 2017" and how those commissions were calculated. *Id.* Because commissions were

paid weekly, Coastal would have to research a total of 780 different payments—an onerous feat. Accordingly, the Court precludes such questioning.

Topics 24–26 request testimony concerning "the specifics of every load Coastal brokered for 53 different customers," including the shipper fees collected, net profit, and all commissions paid. *Id.* This would require Coastal to "research hundreds of different loads going back to 2002, including the amount invoiced to those customers, the amount paid by those customers, the amounts paid to the carriers for those shipments, and whether there were any offsets." *Id.* Coastal argues Seaside never even "established that any of these customers 'belonged' to Seaside." *Id.* Again, given the unduly burdensome nature of looking into countless loads, the Court concludes that such questioning is prohibited.

Topic 30 requests that Coastal disclose its gross and net revenues from 2002 to present. ECF No. 166-1 at 10. Coastal asserts that it does not maintain records of its revenues going back to 2002. ECF No. 203 at 7. But it does not assert why calculating such revenues would be unduly burdensome. And Seaside seeks this information to calculate its damages for unpaid commissions. ECF No. 217 at 11. As the benefit to Seaside outweighs any speculated burden to Coastal, the Court determines that such questioning is permissible.

Topic 31 requests that Coastal disclose its "average carrier costs" from 2002 to present for the entities identified on Exhibit 1. ECF No. 166-1 at 10. "Carrier

costs are commodities and vary widely depending on a number of factors, from the time of year, to the cost of gasoline, to the weather." ECF No. 203 at 7. Seaside believes this information can be identified "without much effort" through the McLeod software system and that Coastal "should be presumed to track this information." ECF No. 217 at 11. But Coastal's Controller attests "it would be very difficult for Coastal to find this information, given how far back Seaside is demanding Coastal go and considering that it never calculated its 'average carrier costs.'" ECF No. 204 at 4. Thus, the Court determines that the McLeod software does not indeed calculate such information "without much effort," so the burden vastly outweighs any benefit. Questioning on this topic is precluded.

Topic 36 requests every bit of information Seaside provided to Coastal "regarding customers/shippers, freight loads, carriers' costs, freight shipment pricing, carrier costs billing, marketing, and agent/employee retention and training." ECF No. 166-1 at 11. Coastal argues that this would be onerous, which the Court agrees with. While Seaside asserts that Coastal should be able to testify about this information "without much difficulty," surely Seaside is better situated to know exactly what information it provided to Coastal. ECF No. 217 at 11. The Court sees this as an attempt by Seaside to force Coastal to do the work that it already knows is too burdensome to do itself.

Finally, Topic 62 requests Coastal describe what the McLeod software did for Coastal and what it currently does, and how the software functioned and currently functions. ECF No. 166-1 at 15. The Court disagrees with Coastal's characterization of this request: it does not request to know about each and every function in the software. *See* ECF No. 203 at 7. As Coastal itself asserts, the software "controls nearly every aspect of Coastal's business" and is a key recurring software in this litigation. *Id.* The information requested could hardly be considered unduly burdensome and borders on everyday knowledge for Coastal. The burden on Coastal, if any, hardly outweighs the huge benefit it would provide Seaside. Thus, questioning on this topic is not prohibited.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Coastal Carriers, LLC's Renewed Motion for Protective Order, **ECF No. 203**, is **GRANTED IN PART AND DENIED IN PART**.

2. The Court enters the following protective order: Seaside may not question Coastal's Rule 30(b)(6) witness on the following topics: **13, 21, 24, 25, 26, 31, 36, 53, and 54**. While Seaside may inquire about Topic **42**, it must be limited to information about information on the Missouri Director of Operations only.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 8th day of February 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge