FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 04, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SEASIDE INLAND TRANSPORT, | No.   2:17-cv-00143-SMJ |
| Plaintiff, | |
| v. | **ORDER RULING ON SUMMARY JUDGMENT MOTIONS** |
| COASTAL CARRIERS LLC; and JOHN DUNARD AND NICOLE DUNARD, husband and wife, | |
| Defendants. | |

COASTAL CARRIERS LLC,

Third-Party
Plaintiff,

v.

PAUL MASSINGILL, a Washington individual; and SERVICE DRIVEN TRANSPORT INC., a Washington corporation,

Third-Party
Defendants.

PAUL MASSINGILL,

Third-Party
Plaintiff,

v.

COASTAL CARRIERS LLC, and JOHN DUNARD AND NICOLE DUNARD,

Third-Party
Defendants.

Before the Court, without oral argument, is Coastal Carriers LLC and John and Nicole Dunard's Motion for Summary Judgment Partially Dismissing First-Party Action, ECF No. 226, and Motion for Summary Judgment Dismissing Second Third-Party Action, ECF No. 227. Coastal and the Dunards seek summary judgment in their favor on nearly all of Seaside Inland Transport Inc. and Paul Massingill's claims against them. Seaside and Massingill oppose the motions. ECF Nos. 228, 230. Having reviewed the briefing and the file in this matter, the Court is fully informed and grants in part and denies in part both motions.

## BACKGROUND[1]

John Dunard is the owner, chief executive officer, and president of Coastal Carriers LLC, the successor in interest to Coastal Carriers Inc. ECF No. 232 at 2. His spouse, Nicole Dunard, owns Valkyrie Express LLC and Valkyrie Logistics LLC. *Id.* Massingill did business as Seaside Inland Transport, which he later incorporated. *Id.* at 3–4.

Coastal was a freight broker that solicited customers' freight shipments and located carriers to haul that freight. ECF No. 252 at 2. Coastal made its money on the net profit or margin—the difference between what customers paid to ship and

---

[1] Consistent with the applicable legal standard, the Court recites the facts in the light most favorable to the nonmoving parties, Seaside and Massingill. The facts are only briefly stated here. Detailed facts appear in Massingill's declaration, ECF No. 232, which the Court must accept as true at this stage.

what Coastal paid carriers to haul. *Id.*

In 2003, Coastal entered into an Agency Agreement with Massingill, doing business as Seaside, to serve as its freight agent by brokering freight on its behalf in exchange for commissions. *Id.* at 2–3; ECF Nos. 226-5, 227-5, 232-1, 316. In 2004, Seaside, now incorporated, assumed Massingill's responsibilities under the Agency Agreement. ECF No. 252 at 3. Coastal and the Dunards considered Massingill and Seaside to be their exclusive brokers. *Id.* at 4.

However, on March 13, 2017, Coastal and the Dunards fired Massingill and Seaside when the former discovered the latter's establishment of a potentially competing freight brokerage, Service Driven Transport Inc. *Id.* Seaside sued Coastal that same day. ECF No. 1-2.

In its fourth amended complaint, Seaside asserts the following twelve causes of action: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) breach of fiduciary duty, (4) unjust enrichment, (5) conversion, (6) promissory estoppel, (7) misrepresentation, (8) interference with business expectancy, (9) fraud, (10) antitrust and consumer protection violations, (11) trade secret violations, and (12) civil conspiracy. ECF No. 215 at 23–29.

In his amended countercomplaint and third-party complaint, Massingill asserts the following four causes of action: (1) unpaid wages and commissions, (2) breach of contract, (3) breach of fiduciary duty, and (4) unjust enrichment. ECF

No. 214 at 6–7.

Coastal and the Dunards seek summary judgment in their favor on all of these causes of action, except Seaside's claim for $29,332 in commissions. ECF No. 226 at 2; ECF No. 227 at 2.

## LEGAL STANDARD

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of showing no genuine dispute of material fact exists because a reasonable jury could not find in favor of the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 n.10, 587 (1986). If the moving party makes this showing, the nonmoving party then bears the burden of showing a genuine dispute of material fact exists because reasonable minds could differ on the result. *See Anderson*, 477 U.S. at 248–51; *Matsushita Elec. Indus.*, 475 U.S. at 586–87.

The nonmoving party may not rest upon the mere allegations or denials of its

pleading and must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires trial resolution. *See Anderson*, 477 U.S. at 248–49. The Court must enter summary judgment against the nonmoving party if it fails to make a showing sufficient to establish an element essential to its case and on which it would bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322.

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.*

## DISCUSSION

### A.   Contract assignment and delegation

The parties agree that, in 2004, "Seaside assumed Massingill's responsibilities under the Agency Agreement." ECF No. 252 at 3 (citing ECF No. 226-4 at 14); ECF No. 253 at 3 (citing ECF No. 226-4 at 14). Indeed, Massingill admits that Seaside "assumed the freight broker-agent duties under the Agency Agreement." ECF No. 231 at 3 (responding to ECF No. 227-1 at 2). And Seaside admits that it "operated consistent with the Agency Agreement" after assuming

Massingill's responsibilities thereunder. ECF No. 229 at 4 (responding to ECF No. 226-1 at 3).

There is thus no dispute that (1) Seaside's assumption of Massingill's responsibilities arising under the Agency Agreement effected a delegation of his future contractual duties, and (2) Seaside's subsequent receipt of Massingill's commissions due under the Agency Agreement effected an assignment of his future contractual rights as well.

But a genuine dispute of material fact exists on whether Massingill retained the right to receive commissions held in an escrow account through the March 13, 2017 termination of the Agency Agreement as to Seaside. The record contains substantial probative evidence that he did. *See* ECF No. 232 at 7–8; ECF No. 240-2 at 3–4. Thus, the Court denies Coastal and the Dunards' motions to the extent they rest on the assertion that Massingill lost, and Seaside gained, all rights under the Agency Agreement in 2004.

## B.    Contract-related causes of action

Seaside's claims for unjust enrichment and promissory estoppel, ECF No. 215 at 24–25, fail as a matter of law because these legal doctrines do not apply where, as here, a valid, binding contract indisputably governs the same aspects of the parties' relationship at issue, *see Klinke v. Famous Recipe Fried Chicken, Inc.*, 616 P.2d 644, 648 n.4 (Wash. 1980); *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d

97, 103 (Wash. 1943); *Boyd v. Sunflower Props., LLC*, 389 P.3d 626, 633–34 (Wash. Ct. App. 2016); *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 119 P.3d 854, 861 (Wash. Ct. App. 2005). Accordingly, Coastal and the Dunards are entitled to judgment as a matter of law on these causes of action.[2]

Massingill's counterclaim and third-party claim for unjust enrichment, ECF No. 214 at 7, does not suffer the same fate. As discussed above, a genuine dispute of material fact exists regarding what rights, if any, Massingill retained under the Agency Agreement. With this matter yet unresolved, Massingill may plead unjust enrichment in the alternative. If this matter is later determined adversely to Massingill, he may still pursue this cause of action to the extent it concerns matters outside the scope of the Agency Agreement.

**C.     Breach of fiduciary duty**

"Generally, participants in a business transaction deal at arm's length . . . ." *Annechino v. Worthy*, 290 P.3d 126, 129 (Wash. 2012) (quoting *Liebergesell v. Evans*, 613 P.2d 1170, 1175 (Wash. 1980)). However, a fiduciary relationship may

---

[2] To the extent these causes of action concern matters outside the scope of the Agency Agreement, they still fail as a matter of law. Seaside's allegation that Coastal and the Dunards "caus[ed] Seaside to pay or incur liability to increase the size of Seaside's business," ECF No. 215 at 24–25, does not establish Seaside conferred any benefit on Coastal and the Dunards, *see Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). Further, Seaside's theory that Coastal and the Dunards made an "implied promise," ECF No. 228 at 11, is precluded by Washington law, *see Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487, 495–96 (Wash. Ct. App. 2012).

arise between contracting parties if "one party occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for." *Liebergesell*, 613 P.2d at 1175 (internal quotation marks omitted).

A fiduciary relationship usually "imparts a position of *peculiar confidence placed by one individual in another*"; thus, a fiduciary is "a person with a duty to act *primarily for the benefit of another*." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 634 (Wash. Ct. App. 1997) (internal quotation marks omitted); *accord Guarino v. Interactive Objects, Inc.*, 86 P.3d 1175, 1192 (Wash. Ct. App. 2004). "The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not on his own behalf, but in the interests of the other party." *Guarino*, 86 P.3d at 1192 (quoting *Goodyear Tire & Rubber*, 935 P.2d at 634). "In other words, the plaintiff must show some dependency on his or her part and some undertaking by the defendant to advise, counsel and protect the weaker party. *Goodyear Tire & Rubber*, 935 P.2d at 634. "For example, a plaintiff's lack of business expertise, and a defendant's undertaking the responsibility of providing financial advice to a close friend or family member, may indicate a fiduciary relationship." *Id.*

Seaside argues Coastal and the Dunards acted as its fiduciaries by "controll[ing] the money collected from Seaside's shippers and paid to Seaside as

commissions, all on the promise that they would pay Seaside 70% or 50% commissions." ECF No. 228 at 10. Further, Massingill argues Coastal and the Dunards acted as his fiduciaries by "escrowing Massingill's commissions 'for the benefit of [Massingill] . . . for the life of the contract.'" ECF No. 230 at 14 (alteration and omission in original) (quoting ECF No. 232-1 at 3). But "[u]nder modern law, holding funds for a purpose does not, by itself, establish a trust or fiduciary relationship." *Cedar River Water & Sewer Dist. v. King County*, 315 P.3d 1065, 1073 (Wash. 2013). "Generally, 'the key element is whether the parties intended a trust relationship rather than a contractual relationship.'" *Id.* (quoting *Thompson v. Atl. Richfield Co.*, 673 F. Supp. 1026, 1028 (W.D. Wash. 1987)).

Viewing the evidence in the light most favorable to Seaside and Massingill, no genuine dispute of material fact exists on whether Coastal and the Dunards were their fiduciaries. A reasonable trier of fact could only find that the parties intended to maintain a contractual or other business relationship.[3] Seaside and Massingill fail to show they were justified in expecting, with peculiar confidence, that Coastal and the Dunards would act primarily for their benefit. Therefore, as a matter of law, Coastal and the Dunards were not fiduciaries of either Seaside or Massingill.

*//*

---

[3] *See generally* Section L, *infra* (discussing whether Massingill was an employee of Coastal and the Dunards in addition to Seaside being their exclusive agent).

## D. Fraud or misrepresentation

The parties do not differentiate between the legal doctrines underpinning Seaside's fraud and misrepresentation claims. *Compare* 6A Wash. State Supreme Court Comm. on Jury Instructions, *Washington Practice Series: Washington Pattern Jury Instructions—Civil* ch. 160 (7th ed. 2019 update) (entitled "Fraud"), *with id.* ch. 165 (entitled "Negligent Misrepresentation"). Indeed, the parties treat Seaside's misrepresentation claim as being subsumed by Washington law governing its fraud claim.[4] Likewise, the Court analyzes Seaside's misrepresentation claim under Washington law governing its fraud claim.

A party claiming fraud must prove the following nine elements by clear, cogent, and convincing evidence:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

---

[4] *See* ECF No. 226 at 24–26 (challenging the "fraud and misrepresentation claims" jointly under a single set of elements; citing *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (discussing "misrepresentation" as an "element of fraud"), and *W. Coast, Inc. v. Snohomish County*, 48 P.3d 997, 1000 (Wash. Ct. App. 2002) (distinguishing "intentional misrepresentation, or fraud" from "negligent misrepresentation"), and *Cont'l Ins. Co. v. Pierce County*, 690 F. Supp. 930, 939 (W.D. Wash. 1987) (discussing a "cause of action for fraud" without reference to "misrepresentation")); ECF No. 228 at 12–13 (defending the suit for "fraud" without mentioning "misrepresentation"; citing *First Md.*, 864 P.2d at 20 (discussing "common law fraud," not "misrepresentation")).

*Elcon Constr., Inc. v. E. Wash. Univ.,* 273 P.3d 965, 970 (Wash. 2012).

Coastal and the Dunards argue Seaside cannot establish the first three elements of fraud—a material misrepresentation of existing fact—by clear, cogent, and convincing evidence. ECF No. 226 at 24–26. Seaside argues Coastal and the Dunards committed fraud by "moving freight for Seaside-generated customers, hiding this fact, and paying no commissions"; "claim[ing] Coastal could not do business with a prospective customer and . . . then broker[ing] freight for that same shipper, without informing Seaside or paying commissions"; "offset[ting] commissions due, without disclosure to Seaside"; and "inducing Seaside to expand its offices, despite [Coastal and the Dunards] simultaneously expanding Coastal's ability to compete against Seaside in its Missouri offices, without informing Seaside, all on the false promise of a long-term relationship with Coastal." ECF No. 228 at 12–13.

Seaside's brief provides nothing more than these bald contentions. Seaside does not reason through the elements of fraud or cite to the record or relevant legal authorities. Instead, Seaside merely supplies its subjective interpretation of the record, leaving the Court to piece together possible arguments for why Coastal and the Dunards might be liable for fraud. *Cf. Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). The Court declines to fill the void in this analysis by crafting such arguments, especially because Seaside bears the burden of proving

fraud's elements by clear, cogent, and convincing evidence.

Seaside has failed to carry its burden of setting forth specific facts, and pointing to substantial probative evidence, showing reasonable minds could differ and trial is necessary to resolve the issues. Thus, Seaside has failed to make a showing sufficient to establish elements essential to its case and on which it would bear the burden of proof at trial. No genuine dispute of material fact exists and, as a matter of law, Coastal and the Dunards are liable neither for fraud nor, by extension, misrepresentation.[5]

## E. Account stated

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995).

An account stated is "a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor." *Sunnyside Valley Irr. Dist. v. Roza Irr. Dist.*, 877 P.2d 1283, 1284 (Wash. 1994) (quoting Restatement (Second) of Contracts § 282(1) (Am. L. Inst. 1981)). "[O]nce an account stated is established, it becomes a new contract." *Parrott Mech., Inc. v. Rude*, 78 P.3d 1026, 1029 (Wash. Ct. App. 2003).

---

[5] This is not to say that no fraudulent or inequitable conduct occurred, *see* Section E, *infra*, but merely to observe that Seaside has failed to prove *liability* for fraud or misrepresentation by clear, cogent, and convincing evidence.

"To establish an account stated, an invoice must set forth the state of the account between the parties and the balance owed." *Id.* Whether an invoice is a true statement of work performed is immaterial to establishing an account stated. *See id.* at 1030. Instead, an account stated requires "mutual[] agree[ment] between the parties that the balance struck thereon is the correct amount due from the one party to the other on the final adjustment of their mutual dealings to which the account relates." *Sunnyside Valley Irr.*, 877 P.2d at 1284 (quoting *Shaw v. Lobe*, 108 P. 450, 451 (Wash. 1910)).

"The mere rendition of an account by one party to another does not show an account stated." *Id.* (quoting *Shaw*, 108 P. at 451). Thus, "[*t*]*here must be some form of assent* to the account, that is, *a definite acknowledgment of an indebtedness in a certain sum.*" *Id.* at 1284–85 (quoting *Shaw*, 108 P. at 451). While "*assent may be implied* from the circumstances and acts of the parties," nevertheless, "*it must appear in some form.*" *Id.* at 1285 (quoting *Shaw*, 108 P. at 451).

"[A] party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent." *Id.* at 1284 (quoting Restatement, *supra*). And "payment, together with a failure to objectively manifest either protest or an intent to negotiate the sum at some future time, does establish an account stated." *Id.* 1285 n.1.

However, "[t]he doctrine of account stated is subject to the rules of mistake

and fraud." *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor Cty.*, 266 P.3d 229, 237 n.9 (Wash. Ct. App. 2011). "Unilateral mistake entitles a party to reform a contract only if the other party engaged in fraud or inequitable conduct." *Assoc'd Petrol. Prods., Inc. v. Nw. Cascade, Inc.*, 203 P.3d 1077, 1082 (Wash. Ct. App. 2009). "But a unilateral failure to know or discover facts does not bar the mistaken party from avoiding or reforming the contract unless his fault amounts to a failure to act in good faith or in accordance with reasonable standards of fair dealing." *Id.* "A party has engaged in fraud or inequitable conduct if it conceals a material fact that it has a duty to disclose to the other party." *Id.*

Coastal and the Dunards argue that, under the doctrine of account stated, Seaside is precluded from challenging the accuracy of the settlement statements regularly sent to it because it retained them for an unreasonably long time after receiving payment under them. ECF No. 226 at 26–27. Seaside does not disagree that it failed to object for an unreasonably long time. *See* ECF No. 228 at 13–14. Instead, Seaside claims that this failure resulted from fraud or mistake, which it did not discover until 2015. *See id.*; ECF No. 232 at 5–6, 17–22. While Coastal and the Dunards label this argument as "specious," ECF No. 235 at 7, the Court may not assess credibility or weigh evidence, *see Anderson*, 477 U.S. at 255. Thus, a genuine dispute of material fact exists on whether the doctrine of account stated applies to the settlement statements.

## F.    Conversion

Conversion is "the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *Potter v. Wash. State Patrol*, 196 P.3d 691, 696 (Wash. 2008) (quoting *In re Langham*, 106 P.3d 212, 218 (Wash. 2005)). The definition of "chattel" includes "an article of personal property, as distinguished from real property"; "a thing personal and moveable," which "may refer to animate as well as inanimate property"; "moveable or transferable property"; and "a tangible good or an intangible right (such as a patent)." *Langham*, 106 P.3d at 218 (internal quotation marks and brackets omitted). For example, "a patent (a governmental grant of a right) can be a chattel" and "a stock option can be a chattel as well." *Id.*

Similarly, "[m]oney may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it." *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 609–10 (Wash. Ct. App. 2010) (quoting *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 18 P.3d 1144, 1147 (Wash. Ct. App. 2001)). Further,

> "[t]here is nothing in the nature of money making it an improper subject of [conversion] so long as it is capable of being identified, as when delivered at one time, by one act and in one mass, or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained."

*Id.* at 610 (alterations in original) (quoting *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 138 P.3d 638, 646 (Wash. Ct. App. 2006)).

Coastal and the Dunards argue Seaside cannot prove conversion because it cannot establish that the specific commissions and information involved here are chattels. ECF No. 226 at 24. Seaside argues "the money is identifiable" through traceable evidence and "its shipping customer lists, pricing, and other confidential information" were also misappropriated by Coastal and the Dunards. ECF No. 228 at 12. These items may constitute articles of personal property that qualify as chattels, or not. Reasonable minds could differ about whether the specific commissions and information involved here are chattels. A genuine dispute of material fact exists on this issue.

Coastal and the Dunards also argue Seaside has no admissible evidence proving they "stole [its] allegedly confidential trade information or customers." ECF No. 226 at 24. This mere statement, without elaboration, is insufficient to show no reasonable jury could find in favor of Seaside. Therefore, Coastal and the Dunards have failed to carry their initial burden of showing no genuine dispute of material fact exists.

**G.  Interference with business expectancy**

A party claiming tortious interference with a business expectancy must prove the following five elements:

(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 280 (Wash. 2006) (quoting *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997)). "A plaintiff must show that the interferor was an intermeddling third party; a party to the relationship cannot be held liable for tortious interference." *Vasquez v. State*, 974 P.2d 348, 355 (Wash. Ct. App. 1999) (citing *Houser v. City of Redmond*, 586 P.2d 482, 484 (Wash. 1978)).

Coastal and the Dunards argue "Seaside cannot establish that it had a reasonable expectation of a contractual relationship or business expectancy with the customers it claims were stolen" because "as an agent for [Coastal], Seaside acted on behalf of [Coastal]" and "[i]ts relationship with customers was not Seaside's relationship but, rather, [Coastal]'s relationship, as the broker." ECF No. 226 at 34. Seaside argues it "had a business expectancy with its procured customers" because it "promised to transport the customer's freight, and the customer agreed Seaside could transport the freight for a fee." ECF No. 228 at 20. But Seaside admits it "brokered in Coastal's name, per the Agreement." *Id.* And Seaside cites no legal authority suggesting an agent can develop an *independent* business expectancy with a customer it procures on behalf of a principal, solely by virtue of such procurement.

It seems to the Court that, while the agent may be entitled to commissions for past transactions, any expectation of future business belongs to the principal.

Seaside has failed to carry its burden of setting forth specific facts, and pointing to substantial probative evidence, showing reasonable minds could differ and trial is necessary to resolve the issue. Thus, Seaside has failed to make a showing sufficient to establish an element essential to its case and on which it would bear the burden of proof at trial. No genuine dispute of material fact exists and, as a matter of law, Coastal and the Dunards are not liable for interference with business expectancy.

**H.    Consumer protection violations**

A party claiming a consumer protection violation must prove the following five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

Public interest impact may be established in one of several ways:

> In a private action in which an unfair or deceptive act or practice is alleged under RCW[6] 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:
> (1) Violates a statute that incorporates this chapter;
> (2) Violates a statute that contains a specific legislative declaration of public interest impact; or

---

[6] Revised Code of Washington

(3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.

RCW 19.86.093. "The first two subsections of this statute reflect . . . that the public interest element can be satisfied per se where the plaintiff shows violation of a statute that contains a specific legislative declaration of public interest impact." *Rush v. Blackburn*, 361 P.3d 217, 227 (Wash. Ct. App. 2015) (omission in original) (quoting *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1196 (Wash. 2013) (Madsen, C.J., concurring)). "Subsection (3), by contrast, 'bases public interest impact on actual injury and capacity to injure.'" *Id.* (quoting *Klem*, 295 P.3d at 1196 (Madsen, C.J., concurring)).

"For violations falling under subsection (3), 'whether the public has an interest in any given action is to be determined by the trier of fact from several factors, depending upon the context in which the alleged acts were committed.'" *Id.* (quoting *Hangman Ridge*, 719 P.2d at 537). Where, as here, the matter is "essentially a private dispute," the following factors may be relevant: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id.* at 228 (quoting *Hangman Ridge*, 719 P.2d at 538). Different factors apply when the matter is "essentially a consumer transaction." *Id.* (quoting *Hangman Ridge*, 719 P.2d at 537). "Although the factors

applicable vary and can depend on whether the situation involves a public transaction or a private dispute, 'not one of these factors is dispositive, nor is it necessary that all be present.'" *Id.* (quoting *Hangman Ridge*, 719 P.2d at 538).

Coastal and the Dunards argue Seaside cannot establish public interest impact because this case is "a private dispute"—"a business dispute between two companies in the freight brokerage industry" that "does not arise out of advertising, affect consumers, or concern the public"; and presents "no likelihood that other plaintiffs have been or will be injured 'in exactly the same fashion' and no 'real and substantial potential for repetition.'" ECF No. 226 at 27 (quoting *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009)). Seaside argues this is a factual issue and all four factors weigh in its favor. ECF No. 228 at 14–16.

Indeed, at this stage, these factors appear to suggest a measure of public interest impact. Coastal and the Dunards committed the alleged acts, if at all, in the course of their business. They advertise to the public in general. They actively solicited Seaside via Massingill, indicating potential solicitation of others. And they occupy a higher bargaining position than Seaside and Massingill. It is debatable whether the alleged unfair or deceptive act or practice had the capacity to injure other persons. Thus, a genuine dispute of material fact exists on whether this case impacts public interest.

//

## I.    Antitrust violations

"Every contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is . . . unlawful." RCW 19.86.030. In construing this statute, Washington courts are guided by federal antitrust law. *Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 677 (Wash. 1987). "An illegal combination in restraint of trade requires two factors to be present: (1) two or more actors, and (2) concerted action." *Id.* This statute "reaches unreasonable restraints of trade effected by a 'contract, combination . . . or conspiracy' between *separate* entities." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (omission in original) (quoting 15 U.S.C. § 1). And, under this statute, "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise." *Id.* at 771.

Coastal and the Dunards argue Seaside "has no evidence that [they] engaged in concerted action with any other person or entity for a common end of restraint of trade" and "cannot sidestep this requirement by alleging that the alleged conspiracy involved [them]." ECF No. 226 at 28. Seaside argues Coastal and the Dunards "ignore the evidence of the affiliated relationship between Dunard, Coastal, Truck Lines, Valkyrie Express, and Valkyrie Logistics – same owners, offices, computer system, accounting, and staff." ECF No. 228 at 16. On the contrary, it is Seaside who ignores the import of such evidence.

Elsewhere, Seaside claims that Coastal and the Dunards "owned companies Coastal Carriers Truck Lines, Valkyrie Logistics LLC, and Valkyrie Express LLC." ECF No. 229 at 17. Coastal and the Dunards do not dispute the substance of this claim. ECF No. 236 at 23. As a matter of law, the coordinated activities between Coastal and the Dunards and their wholly-owned companies are those of a single enterprise. Seaside fails to show a genuine dispute of material fact on whether Coastal and the Dunards engaged in concerted action with outside persons or entities. Therefore, Coastal and the Dunards are not liable for antitrust violations.

**J.  Trade secret violations**

A party claiming misappropriation of a trade secret has the burden of proving a legally protectable trade secret exists. *Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 942 (Wash. 1999). A trade secret is

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4).

"Trade secret protection will not generally attach to customer lists where the information is readily ascertainable. . . . from public sources such as trade directories or phone books . . . ." *Ed Nowogroski Ins.*, 971 P.2d at 944. "Briefly

expressed, whether a customer list is protected as a trade secret depends on three factual inquiries: (1) whether the list is a compilation of information; (2) whether it is valuable because unknown to others; and (3) whether the owner has made reasonable attempts to keep the information secret." *Id.*

"A trade secrets plaintiff need not prove that every element of an information compilation is unavailable elsewhere. Such a burden would be insurmountable since trade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets." *Boeing*, 738 P.2d at 675 (citation omitted). While "the use of commonly available materials in an innovative way can qualify as a trade secret," nevertheless, "to qualify for protection as a trade secret, the combination must still be shown to have 'novelty and uniqueness.'" *Woo v. Fireman's Fund Ins. Co.*, 154 P.3d 236, 240 (Wash. Ct. App. 2007) (quoting *Machen, Inc. v. Aircraft Design, Inc.*, 828 P.2d 73, 78 (Wash. Ct. App. 1992), *overruled on other grounds by Waterjet Tech., Inc. v. Flow Int'l Corp.*, 996 P.2d 598 (Wash. 2000)); *accord Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996) (concluding that, under Washington law, "novelty is . . . a requirement for trade secret protection").

Coastal and the Dunards argue Seaside cannot show its customer lists and pricing and training methods were novel or unique, as required to constitute trade secrets. ECF No. 226 at 30. Seaside does not argue, and presents no evidence, to

the contrary. *See* ECF No. 228 at 17–20; ECF No. 232. While Seaside argues its customer lists and pricing and training methods are not readily ascertainable from public sources, it presents no evidence to that effect. *See* ECF No. 228 at 18; ECF No. 232. Ultimately, Seaside cannot prove a legally protectable trade secret exists because it "failed to provide concrete examples to illustrate how [its] strategies or procedures in [compiling its customer lists and pricing and training methods] were materially different from those of its competitors." *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 204 P.3d 944, 951 (Wash. Ct. App. 2009) (citing *Woo*, 154 P.3d at 240).

Seaside has failed to carry its burden of setting forth specific facts, and pointing to substantial probative evidence, showing reasonable minds could differ and trial is necessary to resolve the issue. Thus, Seaside has failed to make a showing sufficient to establish an element essential to its case and on which it would bear the burden of proof at trial. No genuine dispute of material fact exists and, as a matter of law, Coastal and the Dunards are not liable for trade secret violations.

**K.    Civil conspiracy**

"[A]n actionable civil conspiracy exists if two or more persons combine to accomplish an unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful means." *Corbit v. J.I. Case Co.*, 424 P.2d 290, 295

(Wash. 1967).[7] A civil conspiracy cannot exist "between a parent corporation . . . and its wholly-controlled subsidiary" or "between an individual and his wholly-owned corporation." *Id.* at 295 n.3.

Coastal and the Dunards argue Seaside cannot establish a civil conspiracy for the same reasons it cannot establish an antitrust violation. *See* ECF No. 226 at 35. Seaside argues Coastal and the Dunards "combined with Truck Lines, Valkyrie Express, and/or Valkyrie Logistics to take Seaside's customers, broker and/or carry their freight, and for Coastal to pay Seaside no commissions." ECF No. 228 at 21. Seaside reiterates that "these entities share ownership, offices, McLeod, and support staff." *Id.* Again, as a matter of law, the coordinated activities between Coastal and the Dunards and their wholly-owned companies are those of a single enterprise. Seaside fails to show a genuine dispute of material fact on whether Coastal and the Dunards engaged in concerted action with outside persons or entities. Therefore,

---

[7] "In order to establish a conspiracy the plaintiff must show that the alleged coconspirators entered into an *agreement* to accomplish the object of the conspiracy." *Corbit*, 424 P.2d at 295. "Even more important, the plaintiff has the burden of preponderating the evidence; and furthermore, the existence of an alleged civil conspiracy must be established by *clear*, *cogent*, and *convincing* evidence." *Id.* "While a finding that a conspiracy existed may be based on circumstantial evidence, mere suspicion is not a sufficient ground upon which to base a finding of conspiracy." *Id.* "The test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent *only* with existence of the conspiracy." *Id.* "The legal concept of civil conspiracy does not necessarily encompass or apply as to all of the verbal or physical actions of parties who, by happenstance, are interested in the same general subject matter." *Id.*

Coastal and the Dunards are not liable for civil conspiracy.

**L.    Unpaid wages**

Under the Washington Minimum Wage Act, RCW 49.46.010(2), "an employee includes any individual permitted to work by an employer." *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 297 (Wash. 2012). "The relevant inquiry is whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.* at 299 (internal quotation marks omitted). Possible nonexclusive factors fall into two categories and include

> (A) The nature and degree of control of the workers;
> (B) The degree of supervision, direct or indirect, of the work;
> (C) The power to determine the pay rates or the methods of payment of the workers;
> (D) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and
> (E) Preparation of payroll and the payment of wages.
> . . . .
> (1) whether the work was a specialty job on the production line;
> (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;
> (3) whether the premises and equipment of the employer are used for the work ([e.g.,] the alleged employee's investment in equipment or materials required for his task, or his employment of helpers);
> (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another;
> (5) whether the work was piecework and not work that required initiative, judgment or foresight ([i.e.,] whether the service rendered requires a special skill);
> (6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;

(7) whether there was permanence in the working relationship; and
(8) whether the service rendered is an integral part of the alleged employer's business.

*Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 421 (2014) (internal quotation marks, brackets, and citations omitted).

Coastal and the Dunards argue Massingill was not an employee because the parties never formed an employment contract. ECF No. 227 at 9–12. But no contract was required. As Massingill argues, "[F]orming an employee-employer relationship requires no writing or express agreement. It forms when the employer 'permits' an employee to work . . . ." ECF No. 230 at 15. Massingill presents evidence that Coastal and the Dunards permitted him to work by having him perform additional, non-brokerage services outside the scope of the Agency Agreement. ECF No. 232 at 4, 6, 8–14. Massingill also presents evidence that he was economically dependent on Coastal and the Dunards when they permitted him to work in this manner. *Id.* at 4, 14–15, 27. Viewing the evidence in the light most favorable to Massingill, a genuine dispute of material fact exists on whether he was Coastal and the Dunards' employee.

Coastal and the Dunards argue Massingill is not entitled to additional compensation because he cannot show his commissions were less than minimum wage. ECF No. 227 at 11–13. This argument misunderstands the counterclaim and third-party claim. Massingill seeks wages only for the additional, non-brokerage

services he claims Coastal and the Dunards had him perform. *See* ECF No. 230 at 18–19. This alleged work was outside the scope of the Agency Agreement and did not earn commissions on brokered freight. And from 2007 onward, this alleged work went entirely uncompensated. ECF No. 232 at 9, 14. Therefore, Coastal and the Dunards have failed to show they are entitled to judgment as a matter of law on Massingill's claim for unpaid wages.

## M.    Statutes of limitations

"A claim that an action is barred by the statute of limitations is an affirmative defense and, as such, the claim must be pleaded and proved by the party who asserts it." *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 177 P.3d 755, 761 (Wash. Ct. App. 2008).

Coastal and the Dunards argue Seaside's claims for unpaid commissions, breach of contract, breach of the covenant of good faith and fair dealing, and conversion are barred by the applicable statutes of limitations. ECF No. 226 at 3, 17–20, 22–26. Further, Coastal and the Dunards argue Massingill's counterclaims and third-party claims for unpaid wages and commissions, breach of contract, and unjust enrichment are barred by the applicable statutes of limitations. ECF No. 227 at 2–3, 5–9, 13–14.

The parties agree the applicable limitations periods are as follows: Seaside had six years from accrual to bring its claims for unpaid commissions and breach

of contract, and three years from accrual to bring its claims for breach of the covenant of good faith and fair dealing, and conversion. *See* RCW 4.16.005, .040(1), .080(2)–(3); *Crisman v. Crisman*, 931 P.2d 163, 165 (Wash. Ct. App. 1997); *Steinberg v. Seattle-First Nat'l Bank*, 832 P.2d 124, 125 n.4 (Wash. Ct. App. 1992). Massingill had six years from accrual to bring his counterclaim for breach of contract, and three years from accrual to bring his counterclaims and third-party claims for unpaid wages and commissions, and unjust enrichment. *See* RCW 4.16.005, .040(1), .080(2)–(3); *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1133 (Wash. 2000); *Eckert v. Skagit Corp.*, 583 P.2d 1239, 1240 (Wash. Ct. App. 1978). These causes of action accrued upon breach or other action or inaction triggering a right to apply for relief.[8] *See* sources cited *supra*.

Coastal and the Dunards argue the above claims, counterclaims, and third-party claims accrued outside the applicable limitations periods because the conduct Seaside and Massingill complain of originated from modifications or other changes in circumstances that occurred in 2003, 2004, 2007, 2009, and 2010. ECF No. 226 at 3, 17–20, 22–26; ECF No. 227 at 2–3, 5–9, 13–14; ECF No. 235 at 6–7; ECF No.

---

[8] Contrary to Seaside's argument, ECF 228 at 6–8, the Agency Agreement was not a contract for "continuous services" and did not involve a "rolling account" delaying accrual, *see* ECF No. 235 at 3 & n.1 (citing *Diettrich Bros. v. Anderson*, 48 P.2d 921, 922–23 (Wash. 1935); *Perry v. Hillman*, 280 P. 346, 348–49 (Wash. 1929); *Hamlin v. Flick*, 226 P. 484, 485–86 (Wash. 1924); *Ah How v. Furth*, 43 P. 639, 640 (Wash. 1896); *Stueckle v. Sceva Steel Bldgs., Inc.*, 461 P.2d 555, 557 (Wash. Ct. App. 1969)).

237 at 6–9. Citing legal authorities concerning breach of contract, Coastal and the Dunards suggest the above causes of action—whether sounding in contract, quasi-contract, tort, or statute—all accrued on one discernable occasion that then continuously endured and was not repeated in separate, actionable events. *See* ECF No. 226 at 3, 17–20, 22–26; ECF No. 227 at 2–3, 5–9, 13–14; ECF No. 235 at 6–7; ECF No. 237 at 6–9. The Court partly agrees and partly disagrees.

"Usually, a cause of action accrues when the party has the right to apply to a court for relief." *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 146 P.3d 423, 428 (Wash. 2006). "Thus, a general breach of contract claim accrues on the date of the breach, not discovery of the breach." *Schreiner Farms, Inc. v. Am. Tower, Inc.*, 293 P.3d 407, 411 (Wash. Ct. App. 2013). "No Washington case recognizes a continuing breach as extending the time allowed to bring a suit sounding in contract. Instead, persuasive authority suggests Washington law holds the opposite." *Id.* (citing *Ford v. Int'l Harvester Co.*, 399 F.2d 749 (9th Cir. 1968)). "While . . . under Washington law the statute of limitations for a continuing breach of contract begins at the initial breach, . . . allegations . . . of repeated, separate breaches . . . [are actionable if] based upon conduct occurring within the limitations period." *Empire Health Found. v. CHS/Cmty. Health Sys., Inc.*, No. 2:17-CV-00209-SMJ, 2017 WL 4544423, at *5 (E.D. Wash. Oct. 11, 2017).

Seaside's claim that the so-called "six-month rule" violates the Agency

Agreement is time barred. It is undisputed that Coastal and the Dunards implemented the rule in 2010 and Seaside was aware of it at the time. *See* ECF No. 215 at 14–15; ECF No. 226 at 19. Subsequent application of the rule is not severable from its initial implementation. Thus, Seaside's claim that the six-month rule violates the Agency Agreement accrued in 2010. Because Seaside did not sue until March 13, 2017, Coastal and the Dunards are entitled to judgment as a matter of law on this claim.

However, Seaside's claim that Coastal and the Dunards violated the six-month rule by taking Seaside-procured customers is not completely time barred. Each occasion that Coastal and the Dunards allegedly did so constitutes a separate, actionable event. *See* ECF No. 215 at 15–16, 23–24; ECF No. 228 at 8–9. Therefore, Seaside may sue for such conduct within the applicable limitations periods preceding March 13, 2017. *See Hidden Hills Mgmt., LLC v. AMTAX Holdings 114, LLC*, No. 3:17-CV-06048-RBL, 2019 WL 3297251, at *17 (W.D. Wash. July 23, 2019); *Empire Health*, 2017 WL 4544423, at *5. For example, under a contract theory, the cause of action is limited to the six years preceding that date; under a good-faith-and-fair-dealing or conversion theory, the cause of action is limited to the three years preceding that date.

Further, Seaside's claim that Coastal and the Dunards failed to pay the percentage of commissions required by the Agency Agreement is not completely

time barred. Again, each occasion that Coastal and the Dunards allegedly failed to do so constitutes a separate, actionable event.[9] *See* ECF No. 215 at 5–6, 8–11, 14–15, 17–18, 20–27; ECF No. 228 at 8. Therefore, Seaside may sue for such conduct within the applicable limitations periods preceding March 13, 2017. *See Hidden Hills Mgmt.*, 2019 WL 3297251, at *17; *Empire Health*, 2017 WL 4544423, at *5. For example, under a contract theory, the cause of action is limited to the six years preceding that date; under a good-faith-and-fair-dealing or conversion theory, the cause of action is limited to the three years preceding that date.

Similarly, Massingill's counterclaims and third-party claims that Coastal and the Dunards failed to pay the percentage of commissions required by the Agency Agreement and failed to pay wages due apart from the Agency Agreement are not completely time barred. Again, each occasion that Coastal and the Dunards allegedly failed to do so constitutes a separate, actionable event. *See* ECF No. 214 at 4–7; ECF No. 230 at 12–13, 15. Therefore, Massingill may sue for such conduct

---

[9] Viewing the evidence in the light most favorable to Seaside, the contracting parties appear to have treated each transaction as a separate, discrete occurrence. *See, e.g.*, ECF No. 111-1 at 2 ("Agent and Broker agree to split commissions realized from transportation brokering activity, in accordance with a schedule to be negotiated pertaining on a shipper by shipper basis as part of this Agreement."); *id.* at 3 ("[A]ll commission checks are created and mailed at the close of business Thursdays. Commission accrues to Agent Friday through Wednesday and are paid weekly."); *id.* ("Broker earns 30% of the gross net profit from every load Agent invoices. Agent earns 70% commission of the gross net, paid within 7 days of receipt of the receivable, less the escrow deposit.").

within the applicable limitations periods preceding March 13, 2017.[10] *See Hidden Hills Mgmt.*, 2019 WL 3297251, at \*17; *Empire Health*, 2017 WL 4544423, at \*5. For example, under a contract theory, the cause of action is limited to the six years preceding that date; under an unjust enrichment theory, the cause of action is limited to the three years preceding that date.

**N.      Equitable tolling**

"The party asserting that equitable tolling should apply bears the burden of proof." *Price v. Gonzalez*, 419 P.3d 858, 863 (Wash. Ct. App. 2018). "Equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed." *Id.* at 862. "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998); *see also Douchette v. Bethel Sch. Dist. No. 403*, 818 P.2d 1362, 1365 (Wash. 1991) ("In the absence of bad faith on the part of the defendant and reasonable diligence on the part of the plaintiff, equity cannot be invoked."). "Courts typically permit equitable tolling to occur only sparingly, and should not extend it to a garden variety claim of excusable neglect." *Price*, 419 P.3d at 863.

Seaside argues equitable tolling should apply because (1) "Coastal's

---

[10] Massingill's counterclaim and third-party claim that Coastal and the Dunards failed to pay commissions held in an escrow account accrued, if at all, upon the March 13, 2017 termination of the Agency Agreement as to Seaside.

settlement statements misrepresented that Coastal was paying Seaside 70% or 50% commissions"; (2) "Seaside did not learn of this deception until 2015"; and (3) "to the extent Coastal argues Seaside knew or should have known of its breach of the Agreement prior to that date, equitably tolling still applies" because "[i]n January 2003 Massingill quit his prior employment and entered into the Agreement at Dunard's urging"; "[a] mere 60 days later, Coastal claims it changed the Agreement's commission payment structure, citing the forged amendment"; and "Massingill and Seaside had no knowledge of the forged amendment until this lawsuit commenced and were economically dependent on Coastal until 2017." ECF No. 228 at 7.

Viewing the evidence in the light most favorable to Seaside, the Court assumes, without deciding, that Seaside has established bad faith, deception, or false assurances on the part of Coastal and the Dunards. Nevertheless, Seaside points to no evidence showing it exercised reasonable diligence to discover such misconduct. At most, the evidence shows Seaside's garden variety excusable neglect. Washington courts are instructed not to extend equitable tolling to such circumstances. The Court is not persuaded that justice requires resurrecting Seaside's time barred claims. Seaside is not left without recourse because it may still pursue its claims that accrued within the applicable limitations periods. But any claims accruing before the applicable limitations periods are now exceedingly stale.

Therefore, the Court will not invoke equity to toll the statutes of limitations governing Seaside's claims.

## CONCLUSION

Viewing the evidence in the light most favorable to Seaside and Massingill, no genuine dispute of material fact exists, and Coastal and the Dunards are entitled to judgment as a matter of law, on (1) Seaside's causes of action for breach of fiduciary duty, unjust enrichment, promissory estoppel, misrepresentation, interference with business expectancy, fraud, antitrust violations, trade secret violations, and civil conspiracy; and (2) Massingill's cause of action for breach of fiduciary duty. Their remaining causes of action are limited as described above because, viewing the evidence in the light most favorable to Seaside and Massingill, no genuine dispute of material fact exists, and Coastal and the Dunards are entitled to judgment as a matter of law on those issues. As to all other issues discussed above, Coastal and the Dunards' motions are denied. The Court does not reach the parties' remaining arguments because they are unnecessary to deciding Coastal and the Dunards' motions.

Accordingly, **IT IS HEREBY ORDERED**:

1. Coastal and the Dunards' Motion for Summary Judgment Partially Dismissing First-Party Action, **ECF No. 226**, is **GRANTED IN PART** and **DENIED IN PART**, as outlined above.

**2.** Coastal and the Dunards' Motion for Summary Judgment Dismissing Second Third-Party Action, **ECF No. 227**, is **GRANTED IN PART** and **DENIED IN PART**, as outlined above.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 4th day of October 2019.

SALVADOR MENDOZA, JR.
United States District Judge